**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 04-20225-CIV-SEITZ/O'SULLIVAN

MOSHE SAPERSTEIN, et. al.,

      Plaintiffs,

v.

THE PALESTINIAN AUTHORITY and THE
PALESTINE LIBERATION ORGANIZATION,

      Defendants.

_____/

## OMNIBUS ORDER

THIS MATTER is before the Court on three motions: (1) Plaintiff Moshe Saperstein's

Motion to Establish Revised Procedure for Entry of Final Judgment [DE 155]; (2) Defendants'

Motion to Clarify That They Are Not In Default [DE 172, 173]; and (3) Defendants' Motion to

Vacate Default [DE 174, 175]. Having reviewed the motions, the responses and the replies thereto,

the entire record and the relevant legal authorities, and having considered the parties' oral arguments

[Transcript, DE 200], the claims of the Saperstein and Amergi Plaintiffs are severed into two cases;

Defendants' default on Count I of the Second Amended Complaint is vacated upon the payment of

the attorneys fees and costs to return the Plaintiff to the *status quo ante*; Count I of the Third

Amended Complaint is stricken, and Counts II and III of the Third Amended Complaint remain

dismissed for lack of subject matter jurisdiction.

## I.    PROCEDURAL HISTORY

On January 29, 2004, Plaintiffs Moshe Saperstein and the Estate of Ahuva Amergi, with Rafi

Amergi as administrator, executor and/or personal representative, filed a Complaint against the

-1-

Palestine Authority ("PA"), the Palestine Liberation Organization ("PLO"), The Palestinian Preventive Security Services, Yasser Arafat[1] and Yaser Mahmud Alkativ under the Federal Terrorism Act ("FTA") and the Alien Tort Claims Act ("ATCA"), respectively. (*See* DE 1.) Plaintiffs filed an Amended Complaint on February 6, 2004. (*See* DE 2.) On March 29, 2004, Plaintiffs filed a Second Amended Complaint ("SAC")[2] adding the "Saperstein Family Plaintiffs,"[3] Rafi Amergi, individually and as legal guardian of minors Itzak Amergi and Efraim Amergi, Dan Davidovic, Judith Davidovic, Eliezer Davidovic, Arile Davidovic and Sarah Zweig (all of whom are Ahuva Amergi's immediate family) (collectively, the "Amergi Plaintiffs"). (*See* DE 8.) The Amergi Plaintiffs claims were included in Count III of the SAC. The SAC also added Defendants Nizhar D'Hlis and Naim Mutzran. On July 13, 2004, Defendants moved to dismiss the SAC for lack of subject matter jurisdiction, failure to state a claim, lack of personal jurisdiction, insufficiency of process, insufficiency of service of process, and improper venue. (*See* DE 14.) On July 20, 2004, the Court struck Defendants' motion because defense counsel, Ramsey Clark and Lawrence Schilling, had not been admitted to practice in this district. (*See* DE 21.)

Nearly a year later, on April 7, 2005, Plaintiffs moved for default judgment against the Defendants for failure to respond to the SAC. (*See* DE 35.) On April 11, 2005, the Court denied Plaintiffs' Motion for Entry of Default Judgment because they had not obtained a Clerk's Entry of Default. (*See* DE 36.) On April 19, 2005, Plaintiffs Moshe Saperstein and the estate of Ahuva

---

[1] On March 23, 2005, the Court granted Plaintiffs' motion to substitute Mahmoud Abbas and the Estate of Yasser Arafat for Yasser Arafat as a party defendant.

[2] The SAC had three counts: (I) the Saperstein FTA claims; (II) the Saperstein ATCA claims; and (III) the Amergi ATCA claims.

[3] The Saperstein Family Plaintiffs include Rachel, Avi Itzhak, Tamar, and Dafna Saperstein.

Amergi (and only those two Plaintiffs) moved for entry of default. (*See* DE 37.) The Clerk of Court entered default on April 20, 2005. (*See* DE 38.) On April 21, 2005, these two Plaintiffs moved for default judgment. (*See* DE 39.) However, on April 25, 2005, defense counsel Schilling and Clark moved for admission *pro hac vice* and also moved the Court to waive the local counsel requirement. (*See* DE 40, 41, 42.) On August 29, 2005, the Court granted defense counsel's *pro hac vice* applications and required Defendants to file a motion to set aside the default or a response to the motion for default judgment. (*See* DE 46.) Defendants moved to set aside the default and opposed Plaintiffs' motion for default judgment on September 8, 2005. (*See* DE 47, 48.) On January 13, 2006, the Court denied Defendants' motion to set aside because Defendants evinced an intentional disregard for the judicial proceedings. (*See* DE 51.) The Court also denied Plaintiffs' motion for default judgment without prejudice to re-file the motion and address whether the Court had personal jurisdiction over Defendants. (*See id.*)

On January 31, 2006, Defendants filed a motion to abate all proceedings in the case for three months pending receipt by defense counsel of instructions from the new political leadership in Palestine (*see* DE 52), which was denied for failure to confer with opposing counsel. (*See* DE 53.) On February 21, 2006, Defendants renewed their motion to abate the proceedings which the Court granted and abated the proceedings until March 17, 2006. (*See* DE 54, 55.) The Court also directed Plaintiffs to file their renewed motion for default judgment by March 24, 2006. (*See* DE 55.) On March 21, 2006, Plaintiffs filed their renewed motion for default judgment and Defendants did not respond. (*See* DE 57.)

In their motion, Plaintiffs argued that the Court had personal jurisdiction over Defendants

as they were properly served and that the Court had subject matter over Count I pursuant to the FTA, and over Counts II and III pursuant to the ATCA. (*See* DE 57.) On July 11, 2006, the Court granted in part and denied in part Plaintiffs' motion for default judgment. (*See* DE 61.) The Court found that it had jurisdiction over the Saperstein FTA claim in Count I and entered a default on liability. The Court dismissed with prejudice the Saperstein claim in Count II because Saperstein was not an "alien" for purposes of the ATCA. The Court denied the motion with respect to the Amergi ATCA claim in Count III and required the Amergis to file a Third Amended Complaint ("TAC") by August 10, 2006 clarifying Ahuva Amergi's citizenship as well as whether private actors may be held liable for extrajudicial killings under the ATCA. The Court also set a status conference to determine the "Status of the Remaining Plaintiffs that did not move for default judgment," i.e., the Saperstein Family Plaintiffs, and to set a trial on damages.

On August 11, 2006, Plaintiffs filed their TAC. (*See* DE 68.) Count I now included FTA claims on behalf of Saperstein as well as the Saperstein Family Plaintiffs. Count II was asserted on behalf of all the Amergi Plaintiffs under the ATCA and Count III was on behalf of all the Amergi Plaintiffs for wrongful death.

On August 28, 2006, Defendants moved to dismiss Counts II and III for lack of subject matter jurisdiction, but they did not attack Count I. (*See* DE 71, 72.) The Court adjusted the briefing schedule at the request of the parties and heard oral argument on the motion at the December 14, 2006 pretrial conference. Ramsey Clark appeared on behalf of the Defendants at the pretrial

conference.[4]  At the hearing, the Court stated its intention to grant Defendants' motion to dismiss

Counts II and III of the TAC and, at Plaintiff's request, referred the trial on damages as to Count I

of the SAC to Magistrate Judge Turnoff. (See DE 95.) The order granting Defendants' motion to

dismiss was entered on December 22, 2006.[5]  (See DE 98.)

Magistrate Judge Turnoff held a two day trial on damages as to Count I of the SAC and the

jury returned a verdict of $16 million which was trebled under the FTA, to $48 million. (See DE

129.) Thereafter, Magistrate Judge Turnoff entered final judgment in favor of Saperstein in the

amount of $48 million and this Court entered final judgment in favor of the Defendants and against

the Saperstein Family Plaintiffs and the Amergi Plaintiffs on their claims. (See DE 129, 130.) On

March 15, 2007, the Saperstein Family Plaintiffs and the Amergi Plaintiffs appealed the Court's

order granting Defendants' motion to dismiss and on April 2, 2007, Defendants appealed the $48

million award in favor of Saperstein. (See DE 131, 135.)

On April 27, 2007, the Eleventh Circuit, citing Fed. R. Civ. P. 54(b),[6] issued a "Jurisdictional

---

[4]  Prior to the pretrial conference, however, the Saperstein Family Plaintiffs moved for a clerk's entry of default based on the TAC. (See DE 77.) The Clerk of Court, however, denied the entry of default because Defendants had appeared in this action. (See DE 79.) Moreover, the Saperstein Plaintiffs and then the Amergi Plaintiffs voluntarily dismissed all Defendants other than the PA and the PLO on November 28, 2006 and December 13, 2006 respectively. (See DE 82, 93.)

[5]  Additionally, the Court dismissed the Saperstein Family Plaintiffs' claim because they had not been given leave to file a TAC and because they could not make a FTA claim due to the fact that Mr. Saperstein did not receive a mortal injury. (See DE 98 at 3, n.3.)

[6]  Fed. R. Civ. P. 54 states in relevant part:
(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Question" inquiring as to whether "the March 8, 2007, judgment is final and appealable?" (*See* DE 143.)   Thereafter, on July 25, 2007, the appellate court dismissed the final judgment in favor of Saperstein holding that the "magistrate judge's March 8, 2007, final judgment as to Moshe Saperstein's claim was not consented to by all parties and has not been adopted or approved by the district court." (*See* DE 145.)   The appellate court then dismissed the appeal of the Saperstein Family Plaintiffs as well as the Amergi Plaintiffs pursuant to Rule 54(b).

With the appeals having been dismissed, the parties filed multiple motions in this Court to correct the procedural deficiencies.   Currently pending before the Court are three motions: (1) Saperstein's motion to establish revised procedure for entry of final judgment on damages [DE 155]; (2) Defendants' motion to clarify that they are not in default [DE 172]; and (3) Defendants' motion to vacate default [DE 174].

## II.    FACTUAL BACKGROUND

The relevant facts taken from Plaintiffs' allegations in the SAC are as follows.   Defendant PA is in *de jure* and *de facto* control of territories in the Gaza Strip and in the Judea and Samaria regions of the West Bank. (*See* DE 8, SAC ¶ 1.) Defendant PLO is in control of Defendant PA. (*Id.* ¶ 2.)   Dismissed Defendant Alkativ was a commander of the Palestinian General Intelligence Services and of the Al Aksa Brigades in Rafiach, an official law enforcement agency of the PA responsible for maintaining public order and prevention of violence and terrorism in the territories controlled by the PA and PLO. (*Id.* ¶ 4.) Alkativ also acted as purchasing agent of armaments for the PA and PLO and such armaments were used by young Palestinian operatives for acts of terror

-6-

against Israel and its inhabitants. (*Id.*)

The PA and PLO advocated, encouraged, solicited, facilitated, incited, sponsored, organized, planned and executed acts of violence and terrorism against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank. (*Id.* ¶ 6.) The United States and Israel repeatedly demanded that the PA and PLO take effective measures to prevent further terrorist attacks. (*Id.* ¶ 7.) In violation of their undertakings and obligations under the Oslo Accords and under international customary law and local law, the PA and PLO refused and ignored American and Israeli demands to take effective measures to prevent further terrorist attacks. (*Id.* ¶ 8.)

Defendants PA and PLO granted financial support to the families of members of the Al Aksa Brigades who had been captured or killed while carrying out acts of terrorist violence against Jewish civilians in Israel, Gaza, and the Judea and Samaria regions of the West Bank, thereby providing the Al Aksa Brigades and its members with strong financial incentive to continue to carry out the violence and terrorism against such victims. (*Id.* ¶ 9.)

Dismissed Defendant D'hliz was a convicted terrorist and member of the Al Aksa Brigades who purchased armaments for the PA and PLO under the orders of Alkativ. (*Id.* ¶ 12.) In early February 2002, Alkativ informed D'hliz that he recruited a young man, Katzir, and requested that D'hliz train Katzir as a terrorist on behalf of the PA and PLO. (*Id.* ¶ 13.) D'hliz trained Katzir in the operation of the AK-47 and techniques to disable passing vehicles and the execution of the vehicles' occupants. After completing his training, Katzir became a member of the Al Aksa Brigades. (*Id.* ¶¶ 15, 16.) Katzir executed his last will and testament and made a video statement regarding the acts of terror he was to commit. (*Id.* ¶ 18.) Dismissed Defendant Mutzran is a

convicted terrorist and a member of the Al Aksa Brigades whom Alkativ also recruited. (*Id.* ¶ 17.)

On February 18, 2002, Mutzran drove Katzir to the Netzarim Road in Gaza near Kisufim, Israel. (*Id.* ¶ 20.)  At that time and place, Katzir performed the terrorist act he had trained for by wounding Saperstein and killing Amergi and two Israeli soldiers. (*Id.* ¶ 21.)  Immediately thereafter, and further up the road, an Israeli battalion located and exchanged fire with Katzir.  Katzir died either from his own hand grenade or an explosive device strapped to his body which prematurely detonated. (*Id.* ¶ 22.)  D'hliz was captured by Israeli police, convicted of 22 criminal counts and acknowledged payments by PLO, the PA and the Al Aksa Brigades. (*Id.* ¶¶ 23, 24.)  Mutzran was also captured by Israeli police, convicted on 13 criminal counts and acknowledged payments by the PLO, the PA and the Al Aksa Brigades. (*Id.* ¶¶ 25, 26.)

## III.    ANALYSIS

The jurisdictional/procedural defect that has returned this matter to this Court is the failure to obtain the consent of both Plaintiff Saperstein and Defendants to the referral of Saperstein's damage claims to Magistrate Judge Turnoff for trial and entry of final judgment.  Plaintiff suggested a procedure for curing the defect whereby the Court would ask Magistrate Judge Turnoff to prepare a report and recommendation based on the damages trial, which this Court would review *de novo* and enter a final judgment. (*See* DE 155.)  However, before the Court could rule on this motion, Defendants filed two motions: (1) a motion to clarify that they are not in default because the filing of the TAC nullified the default on liability granted on Count I of the SAC; and (2) a motion to vacate the default on liability in the event that the Court determined that Defendants were indeed in default. Before the Court can address Plaintiff's motion, it must decide whether Defendants' default

on Count I of the SAC is still viable, and if so, whether that default should be vacated. Therefore, the Court shall address Defendants' motion to clarify that they are not in default first.

### A.    Defendants' Motion To Clarify That They Are Not In Default [DE 172]

Defendants argue that they are not in default because the TAC is the only operative complaint and no default has been entered against them based on it. Essentially, Defendants maintain that by filing the TAC, Saperstein chose to nullify the default on liability that he received on Count I of the SAC and proceed on the TAC. Saperstein argues that the Defendants' motion is in reality a Rule 60(b) motion seeking reconsideration of the Court's orders denying their motion to set aside the default and granting a default on liability as to Count I of the SAC. Moreover, Saperstein contends that the filing of the TAC did not nullify the default on Count I of the SAC because he never had leave to amend the SAC. Also, Saperstein argues that allowing Defendants to circumvent the default on liability entered against them based on a "formalistic argument," would elevate form over substance to an "absurd degree." Below, the Court considers these arguments as to the various plaintiffs.

### 1.    The Saperstein Plaintiffs

The primary debate regarding Plaintiff Moshe Saperstein is whether, by including his Count I in the TAC, he mooted the default on liability that the Court had awarded on July 11, 2006. Defendants rely on the general proposition that a pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout unless it is subsequently modified. 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1476 at 556-57 (2d ed. 1990) (citing *Fritz v. Standard Sec. Life Ins. Co.,* 676 F.2d 1356, 1368 (11th Cir. 1982)

(holding that a complaint that was amended with leave of court superceded the original complaint); *Brown v. E.F. Hutton & Co.*, 610 F. Supp. 76, 78 (S.D. Fla. 1985) (holding that the defendant could move to compel arbitration as to the amended complaint, even though it had not sought that relief in the original complaint, because "when a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the plaintiff"). Defendants also argue that once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading. *Id.* (citing *Miller v. Am. Exp. Lines, Inc.*, 313 F.2d 218 (2d Cir. 1963) which held that where plaintiff filed a complaint on which the defendant moved for summary judgment and then the plaintiff filed an amended complaint, the court's order granting summary judgment based on the original complaint was a nullity).[7]

Defendants primarily rely on *Varnes v. Local 9*, 674 F.2d 1365, 1369-71 (11th Cir. 1982). In *Varnes*, plaintiff sued his former company and union under the Labor Management Relations Act. The company filed a motion to dismiss, and the union did not respond. The court dismissed the complaint with leave to amend and Varnes filed an amended complaint. The company answered the

---

[7] Defendants also rely on the following cases: *Rockwell Int'l Corp. v. US*, 127 S. Ct. 1397, 1409 (2007) (holding that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction") (citation omitted); *Dresdner Bank AG v. M/V Olympia Voyar*, 463 F.3d 1210 (11th Cir. 2006) (holding generally that where a court granted an *ore tenus* motion to amend the complaint to conform to the evidence, the amended pleading supercedes the former pleading); *Saint-Gobain Autover USA, Inc. v. Fuyao Glass Indus. Group Co., Ltd.*, No. 05-71079 2005 WL 3454402, * 1-2 (E.D. Mich. Dec. 16, 2005) (setting aside default partially on the grounds that it had been entered on the original complaint that was rendered null by the filing of the amended complaint); *Vanguard Fin. Serv. Corp. v. Johnson*, 736 F. Supp. 832, 835 (N.D. Ill. 1990) (striking motion for default judgment as moot upon filing of amended complaint); *Best Western Int'l, Inc. v. Melbourne Hotel Investors*, LLC, No. 06-2276, 2007 WL 2990132, *2 (D. Ariz. Oct. 11, 2007) (denying as moot motions for default judgment due to filing of amended complaint).

amended complaint, but the union again did not respond, and the clerk entered a default against the union. After an unsuccessful arbitration, Varnes resumed court proceedings against the union, garnering a default judgment after the union failed to appear. The district court denied the union's motions for relief from judgment and reconsideration.

The Eleventh Circuit reversed with instructions to vacate the default, because the amended complaint, containing new claims, had never been served on the union. In response to Varnes' argument that the court could look to the original complaint because it contained the same allegations as the amended complaint, the appellate court stated that it could not because the original had been superceded by the amended complaint which contained "new or additional claims for relief" in that it sought attorneys' fees. Based on this case, Defendants argue that the filing of the TAC supercedes the SAC and Plaintiffs cannot revive it.[8]

Saperstein, on the other hand, relies on *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27, 29 n.1 (D.D.C. 2001). In *Jenco*, a priest was kidnaped, held hostage and tortured by Hizbollah in Lebanon, and his siblings sued the Islamic Republic of Iran and the Iranian Ministry of Information and Security because they financially supported and controlled Hizbollah. The

---

[8] Notably, the court specifically stated in footnote 6 that it did not address the issue that the instant case presents. As the appellate court stated:

> . . . Because the district court dismissed the complaint we need not decide at what point an amended complaint supersedes the original complaint: when it is filed, *Hutchins v. Priddy*, 103 F. Supp. 601 (W.D. Mo.1952), or when it is served, *International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir. 1977); or if, when there are multiple defendants, whether there can be two complaints charging all defendants, with the original complaint effective as to some defendants and the amended complaint effective as to the others; and, if not, whether it is the original complaint that stays effective until the amended complaint is effective as to all parties or whether the filing of the amended complaint or its service on any one defendant nullifies the original complaint.

*Varnes*, 674 F.2d at 1370.

defendants did not answer the charges, and the court entered default. Apparently, after the court held a trial on damages, the court permitted the plaintiff to amend the complaint under Fed.R.Civ.P.15(b) to conform to the evidence presented at trial. Thus, the complaint was amended to include the brothers, sisters, nieces and nephews of the decedent and additional evidence of the decedent's pain and suffering. Plaintiffs argue that because the *Jenco* plaintiffs were not required to obtain a separate default as to the amended complaint, Saperstein does not have to do so for the TAC.

Here, the Court need not resolve the impact of the inclusion of Count I in the TAC as Plaintiffs did not have leave to file this Count in the TAC. *See* Fed. R. Civ. P. 15(b). As the record reflects, this Court intended to parcel out the Saperstein and Amergi claims.[9] The Court's July 11, 2006 Order specifically stated that "Plaintiffs' Motion for Default Judgment [DE 57] is GRANTED as to Plaintiff Moshe Saperstein's Count I FTA claim." (DE 61 at 14.) The Order also stated: "the Estate of Ahuva Amergi's Count III claim is DISMISSED WITHOUT PREJUDICE. The Estate of Ahuva Amergi has until and including August 10, 2006, to file a Third Amended Complaint." Thus, the Court, at this juncture in the case, decided to allow Moshe Saperstein to proceed on the SAC and the Estate of Ahuva Amergi to proceed on a TAC. This fact is underscored in the Court's December 19, 2006 Order that stated: "Assuming the Court grants Defendants' motion to dismiss [as to Counts II and III of the TAC], the only remaining cause of action will be Moshe Saperstein's defaulted FTA claim in the Second Amended Complaint." (DE 95 n. 2.)

---

[9] The Court had the authority to separate the Saperstein and Amergi claims. *See* Fed. R. Civ. P. 21 (stating that a court may, by motion or on its own, add or drop a party on terms that are just and may sever any claim against any party; *see also* Fed. R. Civ. P. 42(b) (stating that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims"). Moreover, a district court may take action under Rule 42(b) *sua sponte* without motion from a party. *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1312 n.11 (5th Cir. 1976).

The TAC, however, included Count I for which Moshe Saperstein had already received a default. It appears that Plaintiffs sought to obtain a default as to the Saperstein Family Plaintiffs for Count I in the TAC because they had failed to move for entry of default as to the SAC.[10] Contrasting the SAC and the TAC reveals three noteworthy items:

- Both Complaints state in the first paragraph that all the Saperstein Plaintiffs will be collectively referred to as "Saperstein."

- Under Count I of the TAC, entitled "Count 1 - Saperstein.  Terrorism - Civil Remedies," Plaintiffs placed the phrase "(Against All Defendants on Behalf of All Saperstein Plaintiffs)."  This parenthetical was not in the SAC.

- The final paragraph of Count I, in both Complaints, states "Wherefore, Moshe Saperstein seeks damages in excess of 20 Million Dollars, exclusive of interest, costs and attorneys' fees." This sentence indicates that only Moshe Saperstein was seeking relief. Presumably, had all the Sapersteins sought relief, they would have just said "Saperstein," consistent with the naming convention described in the first point above.

As stated, the issue is what was the effect of Plaintiffs filing the TAC with the very slightly altered Count I.  Comparing Count I of both the SAC and the TAC, it is clear that there was no substantive change. All of the Saperstein Plaintiffs were named in both Complaints and Plaintiffs only sought relief in Count I for Moshe Saperstein, not all the Saperstein Plaintiffs.  While it is clear that Plaintiffs had intended to seek entry of default on the TAC as to the Saperstein Family Plaintiffs, the fact that they failed to alter the final sentence of Count I to reflect such fact renders Count I in both Complaints substantively identical.  Thus, the TAC can be construed as having simply restated

---

[10]  The Saperstein Family Plaintiffs did not move for entry of default on Count I of the SAC.  While it remains unclear, presumably the Saperstein Family Plaintiffs did not do so because they had not been included in the *ad damnum* clause of Count I, and therefore, had not formally sought relief.  Curiously, the Saperstein Family Plaintiffs then attempted to seek an entry of default as to Count I of the TAC, but failed to rectify the omission of their names in the *ad damnum* clause of Count I in the TAC.

-13-

Count I of the SAC.

Moreover, any change to Count I in the TAC would constitute an improper attempt to amend the SAC without proper leave of Court. As stated, the Court granted default on liability as to the Moshe Saperstein claims in Count I in the SAC and then required the Amergis to file a TAC. Implicit in this Order is that Plaintiffs did not have permission from the Court to amend Count I. Had Plaintiffs wanted to amend Count I to include the Saperstein Family Plaintiffs in the *ad damnum* clause, they would have had to obtain leave of Court.[11] At this point, the Court effectively severed

---

[11] A review of the docket reveals some action as to what to do about the Saperstein Family Plaintiffs. In the Court's July 11, 2006 Order granting in part and denying in part Plaintiffs' motion for default judgment, the Court set a status conference to determine the "Status of the Remaining Plaintiffs that did not move for default judgment;" i.e., the Saperstein Family Plaintiffs. In the Court's Order Setting Trial Date and Calendar Call [DE 66], the Court set the deadline for filing a motion for a clerk's default for September 18, 2006, and also set a deadline for the Amergi Estate to file their TAC (August 10, 2006). The deadline for filing the motion for clerk's default was relevant to the "remaining Plaintiffs that did not move for default judgment," i.e., the Saperstein Family Plaintiffs. However, the Saperstein Family Plaintiffs did not timely move for Clerk's entry of default. This action contributed to the Court's subsequent actions towards the Saperstein Family Plaintiffs. The Court's Order granting the dismissal of the Amergi Plaintiff's TAC includes the following footnote:

> As noted, Plaintiff Saperstein was granted default judgment as to Count 1 of the SAC. (DE 61.)
> In the TAC, however, Plaintiffs amended Count 1 to assert claims on behalf of Mr. Saperstein and his wife and children. These Plaintiffs were not, however, given leave to make such amendment. Further, the text of the FTA (18 USC § 2333) states: "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, *or* his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." (Emphasis added.) Thus, the statute is phrased disjunctively indicating that *either* Plaintiff Moshe Saperstein *or* his estate, survivors, or heirs may sue ...." Because Mr. Saperstein was not mortally wounded, "his estate, survivors, or heirs" are not able to bring such action. *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1337-38 (D. Utah 2006) (finding that an individual's survivors or heirs cannot recover for a non-mortal injury.) Thus, because Plaintiffs were not given leave to bring their FTA claim on behalf of all Saperstein Plaintiffs and because the FTA only allows the injured person *or* his estate, survivors or heirs to bring this cause of action, the claims of Mr. Saperstein's wife and children must be dismissed.
> (DE 98 at 3, n. 3)

Thus, the Court dismissed the claims of the Saperstein Family Plaintiffs. While an argument can be made that the dismissal was not proper because the Saperstein Family Plaintiffs' claims were never included in Count I of either the SAC or the TAC due to their omission from the *ad damnum* clause, nevertheless, the Court addressed the Plaintiffs' clear intent to assert a claim on behalf of the Saperstein Family Plaintiffs. For the reasons noted above, the Saperstein Family Plaintiffs and their claims are no longer part of this action.

-14-

the Saperstein and the Amergi Plaintiffs into two separate cases albeit under the same case number – with Moshe Saperstein traveling under Count I of the SAC and the Amergis traveling on the TAC.

At the December 14, 2006 hearing, which defense counsel Ramsey Clark attended, the Court announced it intended to grant Defendants' motions to dismiss Counts II and III of the TAC and conducted a pretrial conference as to Count I of the SAC. Defendants' counsel advised he was only authorized to appear as to the jurisdictional issues and not the merits. When Plaintiff indicated he preferred a date-certain trial before the Magistrate Judge due to his health and the international travel of his witnesses, the Court held that the Defendants had waived their right to trial and referred Count I of the SAC to Magistrate Judge Turnoff for trial without obtaining the Defendants' consent.

To rectify the uncertainties and inconsistencies in this case's procedural history, it is necessary to return it to the moment prior to referring Count I of the SAC to Magistrate Judge Turnoff. In summary, Moshe Saperstein was never given leave to file a TAC, and therefore, the default on liability as to Count I in the SAC is still operative. The Saperstein Family Plaintiffs were not given leave to file a TAC and even if they had been, they do not have standing to sue, therefore, their claims are not a part of this action. Accordingly, the Court will strike Count I from the TAC and formally sever Moshe Saperstein's claims asserted in Count 1 of the SAC.

2.    Amergi Plaintiffs

As discussed above, the Court severed the Amergi Plaintiffs' claims from those of Moshe Saperstein, such that they are traveling under the TAC. The Court dismissed such claims for lack of subject matter jurisdiction. For purposes of simplification and expedience, the Court shall formally sever the Amergi Plaintiffs' claims such that these Plaintiffs may take an appeal of the

Court's order of dismissal. Accordingly, the Clerk of Court will be directed to sever the claims of the Amergi Plaintiffs and give them a new case number to be reassigned to this Court.

### B.    Defendants' Motion to Vacate Default [DE 174]

Defendants' alternative position is that the Court should vacate the default on liability as to Count I of the SAC. Until recently, Defendants' participation in this litigation was limited to challenging jurisdiction. (*See* DE 15; DE 89, Ex. 1 (December 4, 2006 Letter from Ramsey Clark to the Court stating that "[defense counsel has] received instructions applicable to this case dated December 2, 2006, that [defense counsel] are to contest the Court's jurisdiction only, but are not to appear on the merits"); DE 90 (Defendants's response to Court Order reiterating language from above letter); DE 95 (Order on December 14, 2006 hearing acknowledging instructions to defense counsel.)) However, in October of 2007, Defendants stated that they were committed to "full and complete participation in numerous cases in the United States courts." (*See* DE 166 at 9.) Defendants represent that after the death of Yasser Arafat, President Abbas wrote to U.S. Secretary of State Rice requesting guidance with respect to the ongoing litigation of FTA suits filed in the United States. (*Id.*) Secretary Rice encouraged the PA to "respond to the U.S. legal proceedings in good faith and in a timely manner." (*See* DE 166, Ex. A.) Defendants assert that immediately after receiving Secretary Rice's response, they retained new counsel who began to implement the "clear directive from their clients to participate fully in this and other litigation," and to "engage in a good faith course of responding to this action in a cooperative and complete manner." (*See* DE 166 at 9.) Defendants therefore seek to vacate the entry of default so that they can address the merits of the claims in the TAC.

Judge Marrero, in the Southern District of New York, recently ruled on a motion to vacate a judgment involving the Defendants. *Knox v. The Palestine Liberation Org.*, 248 F.R.D. 420 (S.D.N.Y. 2008). In *Knox*, the plaintiffs sued the PA and the PLO under the FTA for an alleged murder occurring in Israel in January 2002. When the defendants failed to defend on the merits, Judge Marrero entered a default judgment in the amount of $192,740,660.13. The defendants then sought relief from judgment under Fed. R. Civ. P. 60(b). Judge Marrero analyzed the defendants' Rule 60(b) motion with respect to the accepted three factors on a motion for relief from judgment: (1) whether the default was willful; (2) whether the defendants demonstrated the existence of a meritorious defense; and (3) whether, and to what extent, vacating the default judgment would cause the non-defaulting party prejudice. *Id.* at 425. Additionally, Judge Marrero analyzed other exceptional circumstances relevant to the motion, including the defendants' changing political dynamics, the size of the judgment, the impact on United States foreign policy and historical and public interest concerns. *Id.* at 430-33. Based on these factors, Judge Marrero granted the defendants' motion for relief from judgment, but enumerated four conditions for the vacatur: (1) the posting of sufficient security to cover the previous judgment; (2) the reimbursement to the plaintiffs of the reasonable costs arising because of the default; (3) the admission of certain prior testimony in a subsequent damages trial, if the plaintiffs establish liability; and (4) a stipulation that the Southern District of New York was the proper venue. *Id.* at 433.

  1. <u>The Legal Standard</u>

  The parties dispute whether Federal Rule of Civil Procedure 55(c) or 60(b) is the proper standard for analyzing the Defendants' motion. Defendants maintain that because they are seeking

merely to vacate a default, rather than a final judgment, on Count I of the SAC, Rule 55(c) governs

and they have met the Rule's standard of "good cause." Plaintiff, however, argues that Rule 60(b)

controls because Defendants' previous motion to set aside the default was denied, and therefore, their

motion is one that seeks a reconsideration of an order.

Rule 55(c) states that a court "may set aside an entry of default for good cause, and it may

set aside a default judgment under Rule 60(b)." Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative
> from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been
> discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
> misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier
> judgment that has been reversed or vacated; or applying it prospectively is no longer
> equitable; or
> (6) any other reason that justifies relief.

The applicable provision for this case would be subsection (6) of Rule 60(b).

The relevant procedural time line is as follows. Between April 19 and 21, 2005, Plaintiffs

moved for a default [DE 37], which was entered [DE 38], and moved for default judgment [DE 39].

Three days later, Defendants' first counsel moved for *pro hac* admission and within 10 days of the

granting of that motion, moved to set aside the Clerk's default [DE 47]. On January 17, 2006, the

Court denied Defendants' motion to set aside the Clerk's default holding that Defendants' conduct

"evince[d] an intentional disregard for these proceedings," but the Court also denied, without

prejudice, Plaintiffs' motion for default judgment. (*See* DE 51.) In February, 2006, Defendants'

moved to abate the proceedings pending receipt of instructions due to new political leadership. The

next month, Plaintiffs renewed their motion for default judgment [DE 57] to which the Defendants did not respond. In July, 2006, the Court granted Plaintiffs' motion for default judgment on liability on Count I of the SAC [DE 61] and, following the December 2006 pretrial conference, referred Moshe Sapterstein's claim to the Magistrate Judge who conducted the jury trial on damages and entered a final judgment in March, 2007. The Defendants appealed the Magistrate Judge's judgment, and in July, 2007, the appellate court remanded because without the Defendants' consent the Magistrate Judge lacked jurisdiction to enter an appealable final judgment.

Although no final judgment has been entered in this case, which would mean that Rule 55(c) would guide the Court's discretion in deciding the motion rather than the more stringent provisions of Rule 60(b), the Court cannot overlook the fact that Defendants' motion, while focused on setting aside the order granting default on liability [DE 61], also essentially seeks a reconsideration of the Order denying their motion to set aside the entry of Clerk's default [DE 51], which arguably requires a Rule 60(b)(6) review. *See Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988) (the Rule 60(b) standard is more rigorous than that of Rule 55(c)); *see also EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990)(excusable neglect standard under Rule 60(b) is more rigorous than the "good cause" standard of Rule 55(c)); 47 Am. Jur.2d *Judgments* § 685. Deciding which rule controls is not essential because as a general rule, the factors a court considers in deciding a motion to vacate a default under Rule 55(c) are the same as those for vacating a default judgment, the difference is the latter generates a heightened level of scrutiny. Because of the previous finding of Defendants' intentional disregard for the judicial proceedings, the history and present posture of the case, the Court weighed the Rule 55(c) factors in a heightened fashion.

2.     Applying the Factors of Rules 55(c) and 60(b)(6)

Under Rule 55(c), a court uses a "good cause" standard to determine whether to set aside a

default. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88

F.3d 948, 951 (11th Cir. 1996). The good cause standard is a liberal one that varies from situation

to situation. *Id.* In *Compania*, the Eleventh Circuit described the standard as follows:

> We recognize that "good cause" is not susceptible to a precise formula, but some
> general guidelines are commonly applied. [*Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir.
> 1989)]. Courts have considered whether the default was culpable or willful, whether
> setting it aside would prejudice the adversary, and whether the defaulting party
> presents a meritorious defense. *Rafidain Bank*, 15 F.3d at 243; *see also Robinson v.
> United States*, 734 F.2d 735, 739 (11th Cir. 1984). We note, however, that these
> factors are not "talismanic," and that courts have examined other factors including
> whether the public interest was implicated, whether there was significant financial loss
> to the defaulting party, and whether the defaulting party acted promptly to correct the
> default. *E.g., Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir. 1992). "Whatever
> factors are employed, the imperative is that they be regarded simply as a means of
> identifying circumstances which warrant the finding of 'good cause' to set aside a
> default." Id. However, if a party willfully defaults by displaying either an intentional
> or reckless disregard for the judicial proceedings, the court need make no other
> findings in denying relief.

*Compania*, 88 F.3d at 951-52.

Under Rule 60(b)(6), when considering whether to set aside a judgment, a court should keep

in mind that the law strongly disfavors default judgments, preferring the resolution of genuine

disputes on the merits, and thus, should consider whether the defendant has a meritorious defense and

whether extraordinary circumstances exist. *Jackson v. People's Republic of China*, 794 F.2d 1490,

1496 (11th Cir. 1986). In *Griffin v. Swim Tech Corp.*, the Eleventh Circuit described the application

of the Rule 60(b)(6) standard saying:

> ...This clause is a broadly drafted umbrella provision which has been described as "a
> grand reservoir of equitable power to do justice in a particular case when relief is not

warranted by the preceding clauses." 7 J. Lucas & J. Moore, Moore's Federal Practice ¶ 60.27[2] at 375 (2d ed. 1982). It is well established, however, that relief under this clause is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances. *Ackermann v. United States*, 340 U.S. 193, 202, 71 S.Ct. 209, 213, 95 L.Ed. 207 (1950). The party seeking relief has the burden of showing that absent such relief, an "extreme" and "unexpected" hardship will result. *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932).

*Griffin,* 722 F.2d 677, 680 (11th Cir. 1984).

Similarly, the Third Circuit emphasizes four factors for consideration: (1) whether lifting the default would prejudice the Plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions. *Emcasco Ins. Co. V. Sambrick*, 834 F.2d 71, 73 (3rd Cir.1987). Other courts have considered the public interest involved, the significant financial loss to the defaulting party, and the promptness of the defaulting party to correct the default. *Lexington Lasercomb I.P.A.G. v. Unger*, 234 F.R.D. 701, 702 (S.D. Fla. 2006). Regardless of the factors used in the analysis, they are "simply means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." *Id.* As discussed below, the Court considered all of these general factors in exercising its discretion to set aside the default conditioned upon the Defendants paying Plaintiff's reasonable attorneys fees and costs incurred in responding to the default related motions and preparing for and trying the two day damage trial.

(i)     *Defendants' Willfulness or Culpability*

Defendants argue their failure to respond to the SAC was excusable because they experienced difficulties obtaining local counsel. While the record does reflect this difficulty, the Court previously rejected this argument in its Order denying motion to set aside default. (*See* DE 51.) In fact, the Court

-21-

refused to set aside the default because "Defendants' conduct evince[d] an intentional disregard for these proceedings" even after the Court permitted counsel to proceed without local counsel. (*See id.*) While Defendants argue that the Court should afford some leniency on the "willfulness" question because of the important issues at stake, such arguments do not negate the Court's prior "willfulness" determination.

However, the Court's finding that the Defendants' failure to participate in these proceedings was willful, does not by itself render Defendants' motion to set aside without merit. *Knox*, 248 F.R.D. at 425-26. It is true that the "willfulness" conduct in this case was not of the duration or magnitude as that in *Biton v. Palestine Interim Self-Government Authority*, __ F.R.D. __, No. 01-0382, 2008 WL 2796469 (D.D.C. July 21, 2008). The Defendants are not a recognized, much less typical, foreign state plus the changing political dynamics and volatility in the area create realities that have non-standard effects in this litigation. Moreover, since the remand of this case and new defense counsel's appearance, Defendants have stated a desire to proceed with merits litigation in good faith. While the Court can not ignore Defendants' past conduct as it has had a financial impact on the Plaintiff, given the strong preference for deciding cases on their merits, and because the Court can require payment of reasonable attorneys fees and costs to restore the Plaintiff to the *status quo ante* the default related conduct, this factor does not dispose of the Defendants' request for relief.

   (ii)   *Prejudice to Plaintiff*

In deciding whether to set aside a default, delay alone is an insufficient basis for establishing prejudice. *Knox*, 248 F.R.D. at 429 (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Rather, there must be a showing that the delay will result in the loss of evidence, create increased

discovery difficulties, or provide greater opportunities for fraud and collusion. *Id.* The burden is on the movant to show a lack of prejudice to the non-moving party, and to present evidence showing that the non-moving party would not suffer significant prejudice. (*Id.*)

Saperstein argues that a vacatur would prejudice him in several ways. He states that because Hamas has taken control of Gaza, the situs of his injury, Defendants cannot produce evidence even if it still exists. Thus, Plaintiff implies that a liability trial will not produce a different outcome than the default. Moreover, retrying the damages aspects of the case will cause him further emotional trauma reliving the events, will delay his emotional healing and increase his costs and fees which he may never recover. Finally, Saperstein contends that Defendants continually drag matters out pointing to the fact that they waited four months to originally move to set aside the default and nearly two years to seek reconsideration of that motion.

Defendants contend that because Saperstein amended the complaint as recently as August 2006, Plaintiff's prejudice is minimal. They also claim that a substantial portion of the delay was due to the jurisdictionally impaired damages trial and resulting appeal. Moreover, to minimize any prejudice, Defendants agree to stipulate that Saperstein and his wife would not have to return to the United States again to testify on damages because the testimony from the previous trial could be admitted as evidence in a subsequent trial. Finally, Defendants contend that Saperstein has already investigated the incident in which he was injured, including obtaining police and court records and a videotape of the incident, and therefore, no further investigation is needed.

It is undisputable that most discovery difficulties that might arise in this case will be attributable not to the delay caused by the default, but to the difficulties that inevitably arise in cases

-23-

involving incidents occurring, and involving parties residing, in foreign lands. Exacerbating these difficulties in this case, is not the fact of default, but the on-going political instability and strife in the area. Moreover, Saperstein's own actions contributed to some of the procedural delay and present posture of the case; those actions include his pleading practice, the unauthorized filing of the TAC Count I, his failure to think through the most effective procedures for obtaining a default, and his election to try the case before the magistrate judge. Because the Court will condition the vacatur on the Defendants' payment of reasonable costs and attorneys fees incurred in the two day damage trial and in responding to the motions to set aside the Clerk's default and default judgment, the motions that are the subject of this order, the Court finds that Saperstein can be restored to his position prior to the Defendants' defaulting conduct and thus will not be significantly prejudiced by vacating the default. Therefore, the prejudice factor weighs in favor of vacating the default.

   *(iii)*   *Meritorious Defenses*

   As mentioned above, a significant factor in this analysis is whether the Defendants have demonstrated they have a meritorious defense. *See Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986) (applying Rule 60(b)); *see also Fidelity and Deposit Co. of Maryland v. Jernagan,* No. 87-30080, 1987 WL 49657, *3 (N.D. Fla. 1987) (stating that to set aside a default under Rule 60(b) as opposed to rule 55(c), there must be some "clear and specific statement of a meritorious defense that is supported by a recitation of facts"). In evaluating the merits of the proffered defenses, it is helpful to consider the Seventh Circuit's analysis in a similar case, *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1010-11 (7th Cir. 2002) ("*Boim I*").

   The Seventh Circuit determined in *Boim I,* that under the FTA, a United States national, injured

by reason of international terrorism, "can recover from anyone along the causal chain of terrorism." *Id.* at 1010-11. David Boim had both American and Israeli citizenship. After his murder in Israel by members of Hamas, a foreign terrorist group, his parents sued two organizational defendants based in the United States, who allegedly supported Hamas financially. The district court denied the defendants' motion to dismiss. *Boim v. Quranic Literacy Inst.*, 127 F. Supp. 2d 1002, 1021 (N.D. Ill. 2001). The Seventh Circuit granted the defendants leave to file an interlocutory appeal and held that funding, without more, was an insufficient basis for liability under the FTA and that the plaintiffs must be able to show that the defendants had "knowledge of and intent to further the payee's violent criminal acts." *Boim I*, 291 F.3d at 1011-12. With regard to the aiding and abetting theory, the appellate court determined that the FTA imposes liability on those "who knowingly and intentionally supply the funds to the persons who commit the violent acts." *Id.* at 1021.[12]

Defendants' proffered meritorious defense is that they did not authorize, finance, or otherwise support the actions leading to Saperstein's injuries. (*See* DE 175 at 15.) In support of this argument, Defendants contend that none of the trial exhibits, including Israeli court and police records, establish that the individuals responsible for Saperstein's injuries (Katzir, D'hlis, Alkativ and Mutzran) were Defendants' employees, and even if he could, Saperstein still would not be able to demonstrate that

---

[12] On remand, the district court found the organizational individuals liable under the FTA on summary judgment. *Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885 (N.D. Ill. 2004). The Seventh Circuit reversed and remanded, however, holding that the district court had not made any findings of a "causal link" between the assistance to Hamas and the violent act. *Boim v. Quranic Literacy Inst.*, 511 F.3d 707, 736 (7th Cir. 2007) (*"Boim II"*). Specifically, the appellate court held that the district court erred by not requiring the plaintiffs to show "causation in fact" or "a direct causal link between the defendants' acts and the murder of [the plaintiff]." *Id.* at 736-41. The Seventh Circuit, however, vacated *Boim II* when it decided to hear the appeal *en banc* on June 16, 2008.

the individuals acted at Defendants' direction or with their support.[13]  Defendants assert that while

there is evidence that the individuals who directly caused the injuries to Saperstein are affiliated with

certain violent organizations (the Democratic Front, Hamas, and the Al Aksa Martyrs), there is no

evidence indicating that the individuals or groups acted under the direction of or in concert with the

Defendants.  Defendants also contend that there is no evidence suggesting that the actions of the Al

Aksa Brigades should be imputed to Defendants.  Additionally, Defendants state that there was

conflicting evidence at the damages trial about whether the shooter was wearing a Palestinian police

uniform and that the evidence is conflicting as to the Defendants' link to individual Defendants

Alkativ, D'hlis, or Mutzran. (*See* DE 175 at 16.)  Moreover, Defendants state that the evidence shows

that the PA and these individuals who committed the terrorist acts took adverse actions towards one

another, i.e., that the PA killed an individual aiding the Al Aksa Brigades and that the individual

Defendants stole weapons from the PA.  (*See* DE 175 at 17.)  Based on these assertions, Defendants

argue that Plaintiffs could not have established that Defendants "knowingly and intentionally"

contributed to the violent act toward Saperstein.

     In response, Saperstein argues that Defendants' assertions are insufficient to support a

meritorious defense argument under Rule 60(b).  Specifically, Saperstein contends that Defendants

have only offered denials without any supporting evidence.  Saperstein's point is well-taken.

However, Defendants' assertion that they are not associated with the individual Defendants who are

directly linked to the violence against Saperstein is a "clear and specific statement of a meritorious

defense."  While Defendants' proffer of tangible evidence is certainly lacking, the Court recognizes

---

[13]  The Court is well aware that the trial was for the purposes of damages and not to establish liability. Thus, the Court does not limit its analysis to the trial exhibits.

the difficulty of submitting evidence to prove the non-existence of a relationship. The merits of this case involve agency and proximate cause elements that are the Plaintiff's responsibility to prove. The *Boim I* decision underscores these principles in FTA cases -- there must be evidence that a defendant had the "knowledge of and intent to further the payee's violent criminal acts." *Boim I*, 291 F.3d at 1011-12. The difficulties inherent in these issues in FTA cases will hopefully be clarified in the Seventh Circuit's *en banc* decision in *Boim II*, currently pending. Meanwhile, the Court concludes that Defendants have sufficiently demonstrated the existence of a defense, which if proved at trial, would constitute a complete defense to liability. This determination, however, does not draw any conclusion as to Saperstein's ability to link Defendants to the individual Defendants, but rather acknowledges that Defendants have come forward with a meritorious defense.[14]

### (iv)   *Substantial Loss to Defendant*

Courts have also considered the size of a default judgment when determining whether to vacate under Rule 60(b), particularly where the cause of action includes an award of attorneys' fees and treble damages. *Knox*, 248 F.R.D. at 430 (citing *Bieganek v. Taylor*, 801 F.2d 879, 881 (7th Cir.1986) (finding the treble damages, award of attorneys fees, and the default judgment in excess of $250,000 weighed in favor of vacating pursuant to Rule 60(b)); *see also C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202 (7th Cir.1984) (recognizing that under some circumstances the size of the default judgment might be a legitimate factor because Rule 60(b) is essentially equitable in nature, but that the $600,000 judgment in that case was not significant enough to warrant vacatur). Here, pursuant to the FTA, 18 U.S.C. § 2333(a), any Saperstein damage award would be trebled and he would be

---

[14] Defendants also claim that they have a meritorious defense under the Act of War Exception. However, the Court has previously addressed this argument and found that it was without merit. (*See* DE 61.)

entitled to attorneys' fees. Given that a previous jury awarded him $16,000,000, the Court concludes that the size of a potential default judgment weighs in favor of granting Defendants equitable relief.[15]

      *(v)    Other Factors Warranting Vacatur*

There are two additional factors unique to this FTA case which the Court has considered. First, as Judge Marrero eloquently wrote, resolution of some of the issues in this case have broad and significant ramifications from a historical and public interest standpoint that a default judgment cannot address. *Knox,* 248 F.R.D. at 431-32. There is a strong public interest in learning the truth of the Plaintiff's allegations: whether the Defendants contributed to terrorist activities and whether they have masked criminal acts with official duties and thus abused their authority. The truth of these allegations impact on both the interests of the people that Defendants serve and the interests of the members of the international community who recognize the Defendants as legitimate leaders of a governing entity. These important issues warrant a decision on the merit rather than a resolution by default.

Second, Congress created the FTA cause of action to provide a means to obtain compensation for American victims of foreign terrorist acts by holding those responsible for such attacks accountable financially. It is essential that in our zeal to thwart terrorism and compensate its victims, we do not trample on the fundamental principles of our judicial system. Our system is respected because all litigants, even unpopular ones, have the right to their day in court and all litigants are entitled to equal justice under our laws without sympathy or prejudice for either side. If we fail to be true to these principles in every case then we corrode the judice system on which our democracy rests and which is

---

[15] At the hearing on these motions, the Court advised the Plaintiff that even factoring for the lack of a true adversarial process in a trial involving the emotions that terrorism evokes, the jury's award for an injury to Plaintiff's hand was excessive when compared to awards for similar non-fatal, injuries in the area's state trial courts.

its strongest defense.  By granting the vacatur conditioned on the payment of attorneys fees and costs, the Court affirms our legal principles, ensures respect for the judicial process, and restores Plaintiff to the *status quo ante* Defendants' defaulting conduct.

        (vi)    *Effective Alternative Sanctions*

    In determining whether to exercise its discretion to set aside a default, a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party. *Powerserve Intern., Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001); *see also Knox*, 248 F.R.D. at 432-33 (citing *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 196 (2d Cir.1989) (conditioning vacatur on the defendant's posting of a bond covering the amount claimed, including interest)).  Justification for such a condition depends on the circumstances of the case, and a court must make findings sufficient to permit appellate review of the condition's reasonableness. *Powerserve*, 239 F.3d at 515-16.

    Here, the Court previously found the Defendants exhibited an "intentional disregard" for the proceedings in this case.  While the Defendants assert they have had a change of heart and desire to proceed on the merits in good faith, justice dictates that there be a concrete showing that they will follow through on those promises so that the Plaintiff is not harmed by their actions.  Defendants are foreign entities, whose assets presumably are beyond the jurisdiction of United States courts.  Thus, the Plaintiff's ability to satisfy a judgment for attorneys fees and costs that he has already incurred may be very difficult. Moreover, Plaintiff represents that in a contract case, involving a smaller judgment than is potentially possible here, the Defendants ignored the judgment and have not satisfied it.  Thus, there is a legitimate concern that if the Plaintiff is ultimately successful, he will have incurred double fees

and costs which he will not be able to recover. Thus, to demonstrate their good faith concretely, the Defendants must pay for the reasonable costs and attorneys fees incurred in the two days of trial, the preparation for same, and the briefing and hearings related to the motions to vacate the Clerk's default, the default judgment and the motions that are the subject of this order, to return the Plaintiff to his position prior to the Defendants' defaulting actions.

Whereas, there is a suggestion that the Court impose a bond in the amount of a potential judgment based on the jury award before the Magistrate Judge, the Court will not do so as such may violate due process. There was no appealable final judgment entered in this case. Thus, such action would mean that, before the Plaintiff proves his allegations, the Defendants would have to post funds tied to a potential damage amount that is significantly beyond awards for similar, non-fatal injuries in this district, even accounting for the terrorism aspects of the case. Moreover, it would give the Plaintiff an advantage unavailable to other plaintiffs faced with the vagaries of litigation which include the difficulties in collecting judgments. However, because the Defendants' actions have caused the Plaintiff to incur costs and fees that he would not have incurred had he not had to oppose the Defendants' various efforts to set aside the defaults and to retry the damage potion of the case, the Court will require the Defendants to pay the reasonable costs and attorneys fees to compensate for this effort.

Additionally, given the clear inequities of requiring Saperstein to litigate the damage aspects of this case again, based on the Defendants' stipulation, if Plaintiff chooses, he may use all prior damage testimony in the trial before the Magistrate Judge in lieu of re-presenting such evidence. Finally, because Defendants have attempted on multiple occasions to make jurisdictional arguments that were ultimately rejected, the Court shall not permit summary judgment motions, will require that

the Defendants stipulate to venue in this district, and will set this matter for trial on an expedited track.[16]

## IV.    CONCLUSION

For the reasons discussed above, in balancing the various factors, the Court will exercise its discretion to set aside the default on liability with the four conditions because "good cause" and justice so require.  Therefore, it is hereby

ORDERED that

(1)      The Claims of the Estate of Ahuva Amergi and Moshe Saperstein are SEVERED.  The Clerk of Court is directed to assign the claims of the Estate of Ahuva Amergi a new case number and to ensure that it is assigned to the undersigned.  Upon reassignment, the Court shall issue a final judgment in the Amergi case.

(2)      Count I of the Third Amended Complaint is STRICKEN.

(3)      Defendant's Motion to Clarify That They Are Not In Default [DE 172, 173] is DENIED.

(4)      Defendants' Motion to Vacate Default [DE 174, 175] is GRANTED.  The vacatur has four conditions: (i) Defendants' payment of Plaintiff's cost and attorneys fees incurred in preparing for and trying the two-day damage trial and briefings to respond to Defendants' motion to set aside the Clerk's default, the default judgment on liability and the motions addressed in this order;[17] (ii) Defendants' stipulation that if Saperstein and his wife chose, they do not have to travel to the United

---

[16] Plaintiffs request that admissions to which Defendants have not responded be duly admitted into the record pursuant to Fed. R. Civ. P. 36(a).  (*See* DE 116, Ex. 1, 2.)  However, because these admissions were only sought in preparation for the damages trial and the goal is to litigate the merits of the case, the request is denied.

[17] Consistent with the requirements of Local Rule 7.3B. of District Court of the Southern District of Florida, Plaintiff's counsel shall submit an application for fees and costs consistent with this Order no later than **October 29, 2008.**  If the parties agree to all or any part of the application, they shall advise the Court.  **Within thirty (30) days** of the Court's Order setting the recoverable fees and costs, Defendants must pay the same.

States to testify and that their testimony from the damages trial before Magistrate Judge Turnoff may be read into the record; (iii) Defendants' stipulation that venue in this district is proper; and (iv) the preclusion of the Defendants' filing of any summary judgment motions.

(5)     Plaintiff Moshe Saperstein's Motion to Establish Revised Procedures for Entry of Final Judgment [DE 155] is DENIED AS MOOT.

(6)     The parties shall confer and submit, no later than **November 3, 2008**, a joint scheduling report to determine a case management plan and set an expedited trial date.

DONE and ORDERED in Miami, Florida, this **29**ᴿ day of September, 2008.

PATRICIA A. SEITZ
UNITED STATES DISTRICT COURT

cc:
Magistrate Judge John O'Sullivan
Magistrate Judge William Turnoff
Counsel of Record

-32-